## THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

SARAH M JAMES SAUNDERS,

                              Plaintiff,

v.                                                              **Case No.**

THE WILLOW DOMESTIC VIOLENCE
CENTER, INC.,                                          **JURY TRIAL REQUESTED**

   **Serve**:  Resident Agent
             Sandra Ann Eiges
             Sunflower Road, PO Box 633
             Lawrence, KS 66044

                              Defendant.

## COMPLAINT

1.      Plaintiff Sarah M. James Saunders states her causes of action against Defendant The Willow Domestic Violence Center, Inc. ("Willow" or "Defendant") as follows:

2.      This is an action for sex discrimination and retaliation for having engaged in protected action.  Plaintiff's claims of discrimination arise under Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et. seq*.

3.      Plaintiff was employed as a Survivor Access Advocate from June 12, 2017 until her termination on June 20, 2018.

4.      In April and May 2018, Plaintiff reported that she had been harassed at work. Management discounted her concerns and ultimately retaliated against Plaintiff for having raised such concerns.

5.      Plaintiff also disclosed a serious health condition and reported that she would be seeking a reasonable accommodation of extended leave for surgery and recuperation.

6. Plaintiff seeks all available legal and equitable remedies for claims under the Title VII, including, back pay, front pay, compensatory damages, punitive damages, and attorneys' fees.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action under 28 U.S.C. § 1331, which provides original jurisdiction in this Court for suits arising under federal law.

8. This Court has jurisdiction over Plaintiff's claim because Plaintiff filed a timely Charge of Discrimination with the proper administrative agency and received a Right-to-Sue letter mailed February 14, 2019, and received on February 15, 2019.

9. Venue is proper in the United States District Court for the District of Kansas under 28 U.S.C. § 1391(b)(2), because the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

10. Plaintiff Sarah M. James Saunders was, at all times relevant to this lawsuit, a resident of Lawrence, Kansas.

11. Defendant The Willow Domestic Violence Center, Inc. is a domestic not-for-profit corporation authorized to do business in Kansas. Defendant Willow is an employer within the meaning of Title VII.

## ADMINISTRATIVE PROCEEDINGS

12. On or about November 30, 2018, Mrs. James Saunders filed a timely charge of discrimination against Willow with the EEOC. A copy of Mrs. James Saunders's charge is attached as Exhibit A.

13.     On or about February 14, 2019, the EEOC mailed a notice of right to sue pursuant to Title VII to Mrs. James Saunders, and she received it on February 15, 2019.  A copy of the Right to Sue Notice is attached as Exhibit B.

14.     This action has been filed with this Court within 90 days of Mrs. James Saunders' receipt of the right-to-sue notice of from the EEOC.  Mrs. James Saunders has fully complied with all administrative prerequisites before filing this action.

**FACTUAL BACKGROUND COMMON TO ALL COUNTS**

15.     Plaintiff, an African-American female, began working for Willow as a Survivor Access Advocate on or about June 12, 2017.

16.     On multiple occasions during her year of employment, before Plaintiff engaged in protected action, she received accolades for her performance. In various emails, her supervisor, Mr. Felix Rodriguez, specifically noted her "strong organizational skills," noted that he had received "positive feedback" from other advocates and he also noted that she had taken the initiative to fill in for coworkers when it was necessary.

17.     In numerous verbal interactions, he and others similarly praised her work.

18.     On or about April 16, 2018, Plaintiff met with Mr. Rodriguez and reported that because of a serious health condition which had required hospitalization from April 11 until April 13, she would need surgery and would be taking leave that summer.

19.     On or about April 27, 2018, Plaintiff reported to Mr. Rodriguez that she had experienced race discrimination from a guard at a jail where she had gone to visit a client in connection with her job.

20.     At a staff meeting on May 1, 2018, another advocate reported that a resident had complained that she had been sexually harassed by a male resident and that he had convinced her to let him sit in her car and had made vulgar comments to her.  Plaintiff was present at that staff

3

meeting.  Amanda Martinez, shelter manager, said that she would talk with the resident, but because no one had witnessed the incident, there was nothing else she could do.

21.     On May 2, 2018, the same male resident approached Plaintiff and asked her for a bus pass. During their interaction, the male resident was leering at Plaintiff and made her feel uncomfortable.  She attempted to shield her body from him, but he persisted in staring at her in a suggestive and discomfiting way.

22.     Plaintiff reported her concerns to the shelter manager.

23.     On May 4, 2018, Plaintiff spoke with Mr. Rodriguez about her concerns about having been harassed by the male resident.  She reported that she had learned that the male resident was on the sex offender's registry.

24.     Mr. Rodriguez challenged Plaintiff for having reported her concerns, and chastised her for having looked into whether the resident was on the sex offender's registry.  It was decided at that meeting that the resident would remain at the shelter.

25.     On May 7, 2018, the male resident again sexually harassed Plaintiff, putting his arm around her chair and putting his face close to her neck so that she could feel his breath and could not move without touching him.  Plaintiff redirected him to a different chair.

26.     When Plaintiff reported the incident to Mr. Rodriguez, she specifically noted that she felt unsafe and that she was uncomfortable with the sexual attention from the male resident.

27.     Plaintiff told Mr. Rodriguez that she would note in the log that she felt unsafe with the male resident.  However, Mr. Rodriguez directed her to write only that the advocates should be aware that the resident had problems with not respecting people's personal boundaries. He did not want her to write that she felt unsafe with the male resident.

28.     Mr. Rodriguez's supervision notes from this exchange demonstrate that he minimized Plaintiff's concerns about safety and the unwanted sexual attention from the male resident.

29.     On May 8, 2018, Plaintiff attended a shelter staff meeting. Others expressed concerns about the male resident, and, despite pushback from management, it was decided that he would be given 24 hours to exit the shelter.

30.     On May 15, 2018, during a meeting with Mr. Rodriguez, Plaintiff expressed concerns with the way the issue with the male resident was handled.  Mr. Rodriguez opined that Plaintiff had acted from a place of bias because of the resident's gender.  He also told her that because the male resident had not touched her, she was not in any danger.

31.     Mr. Rodriguez's supervision notes following the May 15, 2018 meeting contained numerous things that were not conveyed to Plaintiff during the meeting.

32.     Mr. Rodriguez's meeting summary also note that Plaintiff had requested a 6-8 week leave in June 2018 for surgery and recuperation.

33.     On May 18, 2018, Plaintiff met with the Executive Director and reported her concerns over how Mr. Rodriguez had discounted her reports of having been sexually harassed and not being safe because of the male resident.

34.     On May 22, 2018, Mr. Rodriguez gave Plaintiff a performance write up.  In giving her the write up, he told Plaintiff she acted from a place of bias with the residents.  When Plaintiff pressed him for examples of her performance shortcomings, he referenced incidents that had occurred prior to her having reported sexual harassment and that had not generated disciplinary action.

35.     On June 1, 2018, Plaintiff met with Mrs. Martinez, the shelter manager, to ask her opinion of the write up and of Plaintiff's performance in general.  Mrs. Martinez said she was happy with Plaintiff's performance and suggested that Plaintiff ask Mr. Rodriguez if there was an "underlying issue" with him which triggered the write up.

36.     On May 31, 2018, Mr. Rodriguez sent Plaintiff an email asking for a completed draft of a presentation she had been assigned to make on June 6, 2018. At that time, Plaintiff had a rough draft of the presentation, but had not completed it.

37.     On June 4, 2018, Mr. Rodriguez chastised Plaintiff for not having completed the presentation sooner and told her that her time management skills were lacking. Plaintiff reminded him that he had not given her a due date and that she had begun from "scratch" with this presentation so it was taking longer.  She also asked Mr. Rodriguez whether there was an underlying issue between them, as she noted that he had been picking on her recently.

38.     Mr. Rodriguez's supervision notes from that exchange acknowledge that he had not given Plaintiff a due date for the presentation, but suggest that she should have known to have the presentation completed several weeks in advance.

39.     On June 5, 2018, Plaintiff submitted the presentation. Mr. Rodriguez acknowledged that it was very thorough.

40.     On June 8, 2018, Plaintiff provided care to a resident who had vomited and appeared sick. The resident asked her not to call an ambulance. Plaintiff sought guidance as to shelter policy on the situation as to whether she was required to call an ambulance, and ultimately, based on guidance she was given, presented options to the resident, who chose to remain at the shelter. With Plaintiff's assistance, the resident recovered and said she was grateful for the care.

6

41.     In the weeks following this incident, no one said anything negative to Plaintiff about this incident.

42.     On June 20, 2018, Plaintiff was fired.  In the termination meeting, she was told that she was being fired because of the incident with the resident who had been sick, and because a staff member had witnessed her leaving a resident unattended in the office which created potential breaches of privacy.  Plaintiff asked for details on when she had allegedly left a resident unattended, but she was never given any information.  Mr. Rodriguez also noted that Plaintiff's performance had been weak and warranted termination.

## COUNT I-TITLE VII GENDER DISCRIMINATION

43.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

44.     Plaintiff is female.

45.     As shown by the foregoing, Plaintiff was subjected to an unwelcome, sexually hostile work environment that was offensive to her and to a reasonable person.

46.     As shown by the foregoing, Plaintiff suffered intentional discrimination during the course of her employment with Defendant, based on her sex, in violation of Title VII, 42 U.S.C. § 2000e-2(a).

47.     Defendant failed to make good faith efforts to establish and enforce policies to prevent unlawful discrimination against its employees.

48.     Defendant failed to properly train or otherwise inform their supervisors and employees concerning the duties and obligations under the civil rights laws, including Title VII.

49.     Defendant failed to properly investigate or implement effective and appropriate procedures to eliminate the hostile work environment.

50.     As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

51.     As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, embarrassment, inconvenience, mental anguish, and related compensatory damages.

52.      Plaintiff is entitled to recover from Defendant reasonable attorneys' fees, as provided in Section 706(k) of Title VII, 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff prays for judgment against Defendant on Count I of her Complaint, for a finding that she has been subjected to unlawful discrimination; for an award of back pay, including lost fringe benefits, bonuses, costs of living increases and other benefits including interest; for an award of front pay in a reasonable amount; for an award of compensatory; for her costs expended; for her reasonable attorneys' fees, costs and expenses; and for such other and further relief the Court deems just and proper.

## COUNT II- RETALIATION

53.     Plaintiff incorporates by reference the allegations in the preceding paragraphs as if set forth herein.

54.     Title VII and the Americans with Disabilities Act prohibit an employer from retaliating against an employee because she has made a complaint about or reported unlawful employment practices or violations of the law, or because she requested reasonable accommodations for a covered disability.

55.     Plaintiff's multiple internal complaints about the male resident constituted protected activity.

56.     Plaintiff's request for a reasonable accommodation of leave for surgery for a covered disability constituted protected action.

57.     Plaintiff's report of having experienced race discrimination from a guard at a jail where she had gone as part of her work constituted a protected action.

58.     After Plaintiff complained about unlawful discrimination and harassment, and after she requested reasonable accommodation, and as a result of her request and complaints, Defendants retaliated against Plaintiff by subjecting her to continuing harassment, and manufacturing alleged performance deficiencies which ultimately lead to her termination.

59.     As a result of the unlawful retaliation to which she was subjected, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

60.     As a further direct and proximate result of Defendant's actions and/or inaction, Plaintiff has suffered humiliation, emotional pain, distress, suffering, embarrassment, inconvenience, mental anguish, and related compensatory damages.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count II of her Complaint, for a finding that she has been subjected to unlawful retaliation; for an award of back pay, including lost overtime; for an award of front pay in a reasonable amount; for an award of compensatory and punitive damages; equitable relief; for her costs expended; for her reasonable attorneys' fees, costs and expenses; and for such other and further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all claims in her Complaint that may properly be submitted to a jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial of this matter.

.

Respectfully submitted,

**DUGAN SCHLOZMAN LLC**

 /s/ *Mark V. Dugan*
Heather J. Schlozman, KS Bar # 23869
Mark V. Dugan, KS Bar # 23897
heathis@duganschlozman.com
mark@duganschlozman.com
8826 Santa Fe Drive, Suite 307
Overland Park, Kansas 66212
Telephone:  (913) 322-3528
Facsimile:  (913) 904-0213

**Counsel for Plaintiff**